UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES

    v.        No. 12-35 ML

HECTOR L. RODRIGUEZ

MEMORANDUM AND ORDER

In 2012, Petitioner, Hector L. Rodriguez ("Petitioner" or "Rodriguez") pled guilty to a one-count Information charging him with possession of five or more kilograms of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). The Court sentenced Petitioner, a career offender, to 240 months incarceration. Petitioner appealed his sentence and that appeal was summarily dismissed. See United States v. Rodriguez, No. 12-2183 (1st Cir. July 9, 2013). Petitioner has now filed a motion to vacate, set aside or correct a sentence pursuant to 28 U.S.C. § 2255.

## I. The Claims

Petitioner alleges two instances of ineffective assistance of counsel. He claims that trial counsel did not (1) inform him of the Government's "first plea offer of 57-84 months and the [Government's] offer to cooperate/proffer;" and, (2) investigate his criminal history prior to plea negotiations. Motion to Vacate, Set Aside or Correct Sentence Pursuant to § 2255 at 3; Docket #32. In support of his allegations, Petitioner provided the Court with an affidavit and a copy of a letter, dated just prior to sentencing, from Petitioner's counsel to the Government. The Court reviewed Petitioner's submissions and the Government's response and determined that an evidentiary hearing was necessary. See generally United States v. McGill, 11 F.3d 223 (1st Cir.

1

1993).  The Court scheduled an evidentiary hearing and appointed counsel for Petitioner.  See Rules Governing Section 2255 Proceedings, Rule 8 (if an "evidentiary hearing is warranted, the judge must appoint an attorney to represent a petitioner who qualifies" as indigent); see also Bucci v. United States, 662 F.3d 18 (1st Cir. 2011).

## II.  The Evidentiary Hearing

At the hearing, Rodriguez testified as did Kevin Salvaggio.  Their testimony is summarized as follows:

### A.  Rodriguez's Testimony

Rodriguez was initially represented by the federal public defender but later retained private counsel, Attorney Kevin Salvaggio ("Salvaggio"), on or about December 1, 2011. Rodriguez executed a plea agreement on March 6, 2012, and pled guilty on April 10, 2012. Salvaggio discussed the sentencing guidelines with Rodriguez before he signed the plea agreement.  Salvaggio informed Rodriguez that his offense level was 34 and that Salvaggio needed to review Rodriguez's criminal record to determine his criminal history category under the United States Sentencing Guidelines.  Salvaggio told Rodriguez that he did not know his guideline range but would get back to him.  According to Rodriguez, Salvaggio asked him if he had a criminal record and he informed Salvaggio that he had been incarcerated for drug trafficking and conspiracy in Massachusetts.[1]

At the time he signed the plea agreement, Rodriguez was aware that he was facing a mandatory minimum sentence of 10 years.  In the plea agreement, the Government agreed to recommend a sentence at the low end of Rodriguez's guideline range or the mandatory minimum

---

[1]The record is not clear concerning when this conversation took place.

sentence, whichever was greater.

Rodriguez first learned that he qualified as a career offender when he received a copy of his pre-sentence report ("PSR") in late August 2012. The PSR reflected that Rodriguez was facing a guideline range of 262 to 327 months incarceration. After Rodriguez reviewed the PSR, he met with Salvaggio. According to Rodriguez, Salvaggio told him that he was shocked to see that Rodriguez was looking at that much prison time and that he would speak to the Assistant United States Attorney handling the case, Attorney Milind Shah ("Shah").

Rodriguez testified that the only offer from the Government that Salvaggio communicated to him was contained in the plea agreement that he signed. After the sentencing hearing, however, Salvaggio gave Rodriguez a folder that contained information concerning his case. Rodriguez reviewed the contents of the folder and discovered a letter from Salvaggio to Shah. In the August 2012 letter,[2] Salvaggio states that

> [a]fter several conversations, without agreeing to any deficiencies in the Government case, [the Government] offered a plea agreement. Mr. [Rodriguez] would be given the opportunity of the 'safety valve', if his proffer during the safety valve bore fruit, it would be given consideration during sentencing. The initial numbers we discussed were between 57-84 months to serve.
>
> . . . .
>
> [Mr. Rodriguez] should be afforded the sentence that was presented to him prior to affixing his signature to the plea agreement.

Exhibit B.[3]

---

[2] The copy of the letter admitted into evidence is unsigned and is dated September 4, 2012. Rodriguez, however, does not dispute that the date of the actual letter that Salvaggio sent to Shah was August 23, 2012.

[3] Shah subsequently responded to the letter and informed Salvaggio that he had discussed the matter with his supervisor and that he was not authorized to recommend a sentence other than the one that was outlined in the plea agreement.

Rodriguez contends that the letter summarizes a "first" offer to plea and an offer to cooperate – and if the cooperation was fruitful – the Government would recommend a sentencing reduction. Rodriguez claims that Salvaggio did not inform him about the "first" offer to plead and cooperate. Rodriguez testified, however, that in or about December 2011 or January 2012, Rodriguez and Salvaggio discussed cooperating and Salvaggio said that Salvaggio would think about it. According to Rodriguez, however, Salvaggio never discussed cooperation with him after this discussion.

### B. Salvaggio's Testimony

Salvaggio was retained by Rodriguez sometime after Rodriguez was arrested. Salvaggio, however, could not recall the date that they first met. Salvaggio testified that during their initial meeting he asked Rodriguez about his contacts with police and whether he had ever been arrested. Rodriguez advised Salvaggio of some juvenile infractions and a domestic violence issue with a former girlfriend. Salvaggio testified that Rodriguez did not give him any indicia of the type of criminal record that would have characterized Rodriguez as a career offender. After this conversation, Salvaggio researched Rodriguez's criminal record in Rhode Island.[4] Salvaggio did not research Rodriguez's criminal record outside of Rhode Island because he testified that he did not have access to that information. Salvaggio filed a discovery motion and Shah forwarded him information in response to the motion; the information did not include Rodriguez's criminal history.

Salvaggio negotiated the plea agreement with Shah during several conversations. Salvaggio testified that he reviewed the plea agreement with Rodriguez and advised him on the

---

[4] The record does not reflect whether Salvaggio discovered if Rodriguez had a criminal record in Rhode Island. The PSR, however, reflects that all of Rodriguez's criminal history occurred in Massachusetts.

contents of the agreement. Salvaggio informed Rodriguez that he was facing a mandatory minimum of 10 years in prison. At the time Rodriguez signed the plea agreement, Salvaggio explained to him that his potential sentence was anywhere between 10 years to life in prison.

Salvaggio testified that he first learned that Rodriguez was a career offender when he received the PSR in late June of 2012. Salvaggio was shocked by Rodriguez's career offender status and the fact that Rodriguez had not informed him about his criminal history. Once he reviewed the PSR, Salvaggio spoke to Rodriguez and informed him that he would speak to Shah to determine if the Government would recommend a lower sentence.

Salvaggio wrote the August 2012 letter after he and Shah discussed Rodriguez's criminal history. Salvaggio testified that the letter was his last attempt to appeal to the Government to get a better deal for Rodriguez. Salvaggio testified that there was only one plea offer from the Government and that was represented by the written plea agreement Rodriguez signed. Salvaggio indicated that the written plea agreement was the only formal plea agreement in the case. Salvaggio testified that Shah did not offer any other written plea agreement.

Salvaggio explained that the reference to "plea agreement" in the August 2012 letter was a "term of art" that he used to refer to plea conversations and negotiations and not a formal plea offer. Salvaggio testified that the reference to "plea agreement" in the letter was his mistake and a misstatement.

Salvaggio stated that he did not know where the reference to "57 to 84 months to serve" in the August 2012 letter came from. Salvaggio reviewed his notes, his calculations, and his presentation to the Court at sentencing, and he could not identify the source of the 57 to 84 month reference. Salvaggio explained that the 57-84 month range would not fit into Rodriguez's

guideline calculation. He did not remember discussing that range with Shah. He said it was possible that he was advocating that, if Rodriguez was safety valve eligible and cooperated, would the Government consider making a 57-84 month sentencing recommendation. Salvaggio averred, however, that he spoke to Rodriguez about offering a proffer, but Rodriguez did not want to cooperate.

Salvaggio testified that Shah did not promise him (1) that he would recommend a sentence of 57-84 months; (2) what Rodriguez's criminal history category would be; (3) that Rodriguez would not be a career offender; or (4) that Rodriguez would be eligible for the safety valve. Salvaggio stated that the only promise that Shah made was reflected in the written plea agreement; that the Government would recommend the mandatory minimum or the low end of the guidelines – whichever sentence was greater. Salvaggio stated that if he had known about Rodriguez's criminal history it would have impacted the advice he gave him.

### III.  Standard of Review – Ineffective Assistance of Counsel

Under the Sixth Amendment, each defendant is guaranteed the right to effective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must show: that (1) counsel's performance was deficient, *i.e.* counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense, *i.e.* a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984).

To satisfy the first prong under Strickland, "the defendant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment, and the court then determines whether, in the particular context, the identified conduct

or inaction was outside the wide range of professionally competent assistance." United States v. Manon, 608 F.3d 126, 131 (1st Cir. 2010) (internal quotation marks omitted). "Judicial scrutiny of the defense counsel's performance is highly deferential, and the defendant must overcome a strong presumption . . . that, under the circumstances, the challenged action might be considered sound trial strategy." Bucci v. United States, 662 F.3d 18, 30 (1st Cir. 2011) (internal quotation marks omitted).

With regard to the second prong, to demonstrate prejudice, Rodriguez "must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. Rodriguez, 675 F.3d 48, 57 (1st Cir. 2012) (internal quotation marks omitted). Although Rodriguez is not required to show "that counsel's deficient conduct more likely than not altered the outcome of his trial," he must show a "probability sufficient to undermine confidence in [that] outcome." Id. (internal quotation marks omitted). "A failure to show prejudice will suffice to defeat a particular claim, without reference to the level of counsel's performance." Nguyen v. United States, 230 F. Supp. 2d 94, 96 (D. Me. 2002). A district court can skip the first prong of the ineffective assistance analysis and decide the case on the prejudice prong. Gonzalez-Soberal v. United States, 244 F.3d 273 (1st Cir. 2001).

## IV. Analysis

With these principles in mind, the Court now turns to Rodriguez's claims.

### A.  Counsel did not inform Rodriguez of the Government's "first" plea offer and offer to proffer/cooperate

Petitioner contends that Salvaggio did not communicate to him the Government's "first" plea offer as outlined in the August 2012 letter. The Government maintains that Rodriguez was

offered one plea offer which was set forth in the plea agreement that he signed.

Defense "counsel has the duty to communicate <u>formal</u> offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." <u>Missouri v. Frye</u>, 132 S. Ct. 1399, 1408 (2012) (emphasis added). The First Circuit has not yet defined what types of prosecutorial communications constitute a "formal offer." <u>United States v. Merlino</u>, No. 99-10098-RGS, 2014 WL 793987 (D. Mass Feb. 28, 2014). District court decisions construing the term appear take into account the "unique facts of the case under consideration." <u>Id.</u>

The Court has considered the testimony of Rodriguez and Salvaggio, the exhibits, and the arguments of the parties. Salvaggio, the author of the August 2012 letter, testified that the letter was his last attempt to get a better deal for Rodriguez. Salvaggio's reference to the phrase "plea agreement" in the letter was his "term of art" that he stated referred to plea conversations and negotiations. In fact, Salvaggio testified that the reference to "plea agreement" in the letter was a misstatement and his mistake. Salvaggio testified unequivocally that there was only one formal plea offer from the Government and that offer was represented in the plea agreement Rodriguez executed.

The Court finds Salvaggio's testimony explaining the letter credible and consistent with the Government's position that Rodriguez pled to the one plea offer proposed by the Government. The Court concludes that there was no plea offer in this matter other than the offer contained in the written plea agreement executed by Rodriguez. Since there was no other formal plea offer in this matter, Rodriguez's claim that counsel was ineffective for failing to communicate the "first" offer fails.

<u>B.  Counsel did not investigate Rodriguez's criminal history prior to plea negotiations</u>

Petitioner argues that Salvaggio did not investigate his criminal history prior to plea negotiations. "There is no per se rule that an attorney's failure to investigate independently his client's criminal history before advising him to accept a plea offer is ineffective assistance" of counsel. United States v. Colon-Torres, 382 F.3d 76, 86 (1st Cir. 2004). A "determination of whether reliance on a client's statement of his own criminal history constitutes deficient performance depends upon the peculiar facts and circumstances of each case." Id. (internal quotation marks omitted). A defendant, however, is in "a far better position [than his attorney] . . . to supply the missing integer in the sentencing equation: his prior criminal record." United States v. Torres-Rosa, 209 F.3d 4, 10 (1st Cir. 2000). Clients "should answer truthfully their attorney's inquiries about their past convictions, and lawyers are entitled to rely reasonably on the explicit representations of clients about their criminal histories." Colon-Torres, 382 F.3d at 86.

The Court need not determine whether Salvaggio's representation was deficient. Rodriguez argues that if Salvaggio had investigated his criminal history he would have discovered that Rodriguez was a career offender. Rodriguez contends he was prejudiced by Salvaggio's failure to investigate his criminal history because it "hampered [Salvaggio's] ability to intelligently advise petitioner whether or not to accept the first plea offer so counsel chose to not advise petitioner at all about the first plea offer." Motion to Vacate, Set Aside or Correct Sentence Pursuant to § 2255 at 9; Docket #32. (emphasis added). As noted above, however, the Court has determined that there was no "first" plea offer. Thus, Rodriguez fails Stirckland's prejudice prong.

### V. Conclusion

For all of the foregoing reasons, Rodriguez's motion to vacate, set aside, or correct his sentence is DENIED and DISMISSED.

### Ruling on Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings for the United States District Courts, this Court hereby finds that this case is not appropriate for the issuance of a certificate of appealability because Rodriguez has failed to make "a substantial showing of the denial of a constitutional right" as to any claim, as required by 28 U.S.C. § 2253(c)(2).

Rodriguez is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. See Rules Governing § 2255 Cases, Rule 11(a).

SO ORDERED.

/s/ Mary M. Lisi
Mary M. Lisi
United States District Judge
August 17, 2015